UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STEPHANY C., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:23-cv-00064-TAB-TWP |
| | ) |
| MARTIN J. O'MALLEY, Commissioner of the | ) |
| Social Security Administration,[1] | ) |
| | ) |
| Defendant. | ) |

**ORDER ON PLAINTIFF'S
BRIEF IN SUPPORT OF APPEAL**

**I.   Introduction**

Plaintiff Stephany C. appeals the Social Security Administration's denial of her application for disability insurance benefits. Plaintiff argues that the Administrative Law Judge failed to adequately consider and confront Plaintiff's capacity for handling or sitting and failed to account for and accommodate Plaintiff's physical symptoms of severe migraine headaches. However, Plaintiff ignores the fact that the ALJ reasonably relied on the medical expert opinion of a state agency medical consultant from the initial level of review, and she does not identify any medical source opinions related to her work capacity that the ALJ failed to consider. The Court finds that the ALJ's decision is supported by substantial evidence. Therefore, Plaintiff's request for remand [Filing No. 13] is denied.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

**II.     Background**

On October 30, 2020, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits. Plaintiff also protectively filed a Title XVI application for supplemental security income. In both applications, Plaintiff alleged disability beginning on March 1, 2014. The SSA denied Plaintiff's claims initially and upon reconsideration. Following a hearing, the ALJ determined that Plaintiff was not disabled.

The ALJ followed the SSA's five-step sequential process to determine if Plaintiff was disabled. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 1, 2014, the alleged onset date. At step two, the ALJ determined that Plaintiff had the following severe impairments: migraines, fibromyalgia, degenerative disc disease of the lumbar spine, anxiety, depression, and attention deficit hyperactivity disorder (ADHD). [Filing No. 11-2, at ECF p. 17.]

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix I. Before reaching step four, the ALJ determined Plaintiff's residual functional capacity, or her remaining ability to work despite her limitations. The ALJ concluded that Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), with the following limitations:

> [Plaintiff] can occasionally climb ramps and stairs but never climb ladders, ropes and scaffolds; she can frequently balance but occasionally stoop, kneel, crouch and crawl; she can never work at unprotected heights and frequently operate a motor vehicle; she can have occasional exposure to odors and can work in moderate noise; she can frequently handle, finger and feel bilaterally; and she can perform simple, routine and repetitive tasks but not at a production rate pace (e.g. assembly line work).

[Filing No. 11-2, at ECF p. 20.]  At step four, the ALJ concluded that Plaintiff could not perform past relevant work.  Finally, at step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that exist in significant numbers in the national economy that Plaintiff can perform, including document preparer and telephone quotation clerk.  [Filing No. 11-2, at ECF p. 27-28.]  Accordingly, the ALJ concluded that Plaintiff was not disabled.

### III. Discussion

Plaintiff claims that the ALJ failed to adequately consider the handling and sitting limits opined by a consultative examiner and failed to accommodate Plaintiff's physical symptoms of migraine headaches.  The Court reviews the ALJ's decision to determine whether the ALJ's factual findings are supported by substantial evidence.  *See, e.g., Biestek v. Berryhill*, __ U.S. __, __, 139 S. Ct. 1148, 1153 (2019) ("On judicial review, an ALJ's factual findings shall be conclusive if supported by substantial evidence." (Internal quotation marks omitted)).  In addition, the Court reviews "to determine whether [the ALJ's decision] reflects an adequate logical bridge from the evidence to the conclusions."  *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).  "The court is not to reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for that of the Commissioner.  Where substantial evidence supports the ALJ's disability determination, we must affirm the decision even if reasonable minds could differ concerning whether the claimant is disabled."  *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (internal citations, quotation marks, and brackets omitted).

### A. Sitting and handling limitations

Plaintiff argues that the ALJ did not adequately consider the handling and sitting limits opined by examining physician Dr. Jerryl Simmons. Dr. Simmons opined that Plaintiff could do activities such as sitting and handling objects on an "occasional" basis. [Filing No. 11-2, at ECF p. 26.] The ALJ found Plaintiff could perform sedentary jobs that required the ability to do "frequent" handling. In doing so, the ALJ explained that Dr. Simmons' opinion was not supported with a function-by-function analysis of Plaintiff's physical abilities. Moreover, as specifically related to the opinion that Plaintiff could only handle objects on an occasional basis, the ALJ found this opinion was not persuasive because it was at odds with Dr. Simmons' own examination findings. [Filing No. 11-2, at ECF p. 25.] Dr. Simmons found Plaintiff could button, zip, and pick up a coin with both hands normally, fully close all of her fingers into fists in both hands, and perform finger abduction normally (5/5) in both hands.

In relation to handling limits, Plaintiff claims the ALJ committed reversible error in failing to provide a logical, evidence-based rationale for her conclusion that Plaintiff could handle objects as heavy as 10 pounds for up to six hours per eight-hour workday. [Filing No. 13, at ECF p. 15.] Plaintiff claims that the ALJ's discussion of Dr. Simmons' opinion ignored the fact that Dr. Simmons observed Plaintiff to have a grip strength of 3/5 bilaterally, which indicated she could not use her hands against any sort of force beyond gravity. And Plaintiff accuses the ALJ of conflating the ability to handle with the ability to "finger" or pick up items. Plaintiff argues that the ALJ impermissibly substituted her own medical opinion for that of the agency's consultative examiner. [Filing No. 13, at ECF p. 18-19.] Plaintiff cites to medical records she argues support Dr. Simmons opinion, but her arguments amount to an improper request that the Court re-weigh the evidence. *See, e.g., Burmester*, 920 F.3d at 510.

With regard to hand functioning, the ALJ considered the objective medical findings in Plaintiff's treatment records that showed no sensory or motor deficits in Plaintiff's upper extremities.  [Filing No. 11-2, at ECF p. 22.]  The ALJ also considered the opinion of Dr. Simmons and explained that it was not persuasive because it was at odds with his findings.  In addition, while focusing on the ALJ's treatment of Dr. Simmons' opinion, Plaintiff ignores that the ALJ relied in part on medical expert opinions from state agency physician Dr. Shayne Small.  Dr. Small reviewed the medical records—including the report from Dr. Simmons—and found Plaintiff could frequently handle, finger, and feel with both hands.  [Filing No. 11-2 at ECF p. 24-25.]  Plaintiff does not address the ALJ's reliance on Dr. Small's opinion in her initial brief.  To the extent she attempts to raise arguments for the first time in her reply brief, this is improper and waived.  *See, e.g., Mary W. v. Kijakazi*, No. 1:20-cv-02335-SEB-TAB, 2021 WL 5168283, at *4, n. 2 (S.D. Ind. Oct. 14, 2021) ("Plaintiff raises additional arguments about ongoing neck pain and claims that the ALJ improperly interpreted subsequent evidence in her reply brief, but these citations and arguments are raised for the first time in reply.  This is improper."), *report and recommendation adopted*, 2021 WL 5165226 (S.D. Ind. Nov. 5, 2021).

Even overlooking waiver, Plainitff's additional arguments are unpersuasive.  In her reply, Plaintiff accuses the Commissioner of playing "what she believes to be a proverbial trump card: that a non-examining agency doctor assessed a less limiting handling limitation so the ALJ was free to rely upon that opinion over the examining physician's opinion without offering even a minimally logical explanation for doing so." [Filing No 18, at ECF p. 2.]  In making this argument, Plaintiff cites case law referencing the outdated treating physician rule, which required the ALJ to give a treating physician's opinion controlling weight if well supported by the findings and not inconsistent with other substantial evidence in the record.  *See, e.g.*, *Moss v.*

5

*Astrue*, 555 F.3d 556, 560 (7th Cir. 2009) ("A treating physician's opinion about the nature and severity of the claimant's impairment is normally given controlling weight so long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with substantial evidence in the record." (Internal citation and quotation marks omitted)). This rule, "though prospectively abrogated, applies to cases . . . filed before March 27, 2017." *Cieszynski v. Kijakazi*, No. 22-2024, 2023 WL 2523499, at *3 (7th Cir. Mar. 15, 2023) (citing 20 C.F.R. § 404.1520c).

Plaintiff filed for disability in 2020, so the treating physician rule does not apply here. Rather, the SSA regulations now require the ALJ to articulate how the ALJ considered medical opinions from all of an individual's medical sources, not just those who may qualify as treating sources. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 FR 5844-01, 2017 WL 168819, at *5853 (Jan. 18, 2017). The ALJ articulated that she relied on the medical opinion of Dr. Small to find frequent fingering and handling limits, explained that he found Dr. Small's interpretation of the consultative examination findings persuasive, and cited specific evidence in support. The ALJ also referenced Plaintiff's reports of difficulty using her hands and weakness that caused her to drop things while also considering Plaintiff's conservative treatment, noted improvement with treatment, and mainly benign examination findings.

Similarly, Plaintiff argues that the ALJ erred by failing to explain why she rejected Dr. Simmons' opinion that Plaintiff could only sit on an "occasional" basis. [Filing No. 13, at ECF p. 21.] The ALJ concluded that Plaintiff was capable of sedentary exertion, which equates to the ability to stand and walk for a maximum of up to 1/3, or just over 2 hours, of an eight-hour workday. *See* S.S.R. 83-10. Plaintiff acknowledges that the ALJ gave some reasons for dismissing Dr. Simmons' opinion regarding Plaintiff's ability to handle, but she argues that the

6

ALJ gave *no* reason as to why she rejected his opinion that Plaintiff could only sit for just over two hours per eight-hour workday.

As described above, the ALJ noted that Dr. Simmons opined that Plaintiff could do activities such as sitting and handling objects on an occasional basis, pending psychiatric evaluation. The ALJ went on to state that this opinion was not persuasive because it was "not supported with a function-by-function analysis of the claimant's physical abilities." [Filing No. 11-2, at ECF p. 25.] Once again, Plaintiff's opening brief completely ignores the fact that the ALJ relied on the prior administrative medical finding of Dr. Small. Dr. Small reviewed the medical records, including Dr. Simmons' report, and assessed a sedentary work capacity, finding Plaintiff capable of six hours of sitting, standing, or walking during the workday. The ALJ found Dr. Small's opinion partially persuasive, noting that the finding Plaintiff could stand or walk was not persuasive because it was not consistent with Plaintiff's symptoms, but the remainder of Dr. Small's findings were persuasive because they were "supported with an in-depth explanation regarding the basis for the findings[.]" [Filing No. 11-2, at ECF p. 25.]

In her reply brief, Plaintiff claims the ALJ's decision includes no specific rationale for relying on Dr. Small's conclusion that Plaintiff could sit for six hours per eight-hour day. Once again, Plaintiff improperly attempts to raise arguments related to the ALJ's analysis of Dr. Small's opinion for the first time in her reply brief. *See, e.g., Mary W.*, No. 1:20-cv-02335-SEB-TAB, 2021 WL 5168283, at *4, n. 2. Moreover, although the ALJ's analysis is relatively bare in relation to Plaintiff's ability to sit, it is not completely lacking. *See, e.g., Richard J.N. v. Kijakazi*, No. 20 C 245, 2021 WL 6063912, at *9 (N.D. Ill. Dec. 22, 2021) ("The ALJ perhaps could have provided a more thorough analysis, but substantial evidence is not a high hurdle to

7

clear, and the ALJ provided enough of a logical bridge between the evidence and her conclusion to allow for meaningful review."  (Internal citation omitted)).

As with the handling limitations, the ALJ confronted the sitting limits suggested by Dr. Simmons and then briefly explained why she relied on the sitting limits assessed by Dr. Small. Thus, the ALJ appropriately considered and explained the basis for her RFC limits on both hand functioning and sitting.  Plaintiff's arguments are unavailing and do not support remand.

### C. Time off task for migraine headaches

Finally, Plaintiff argues that the ALJ's conclusion that her migraines would never result in time off task or interruptions in concentration lacks the requisite logical and accurate bridge to the evidence. [Filing No. 13, at ECF p. 23.]  The ALJ found Plaintiff suffered from numerous severe impairments, including migraines, that significantly limit the ability to perform basic work activities.  [Filing No. 11-2, at ECF p. 17.]  The ALJ acknowledged Plaintiff's testimony that she had significant migraines about 15 times per month that caused her to have to stay in her house and sometimes lay down in a dark room.  [Filing No. 11-2, at ECF p. 20.]  The ALJ further noted that the record confirmed treatment for migraine headaches, but frequency and severity improved with treatment.  [Filing No. 11-2, at ECF p. 22.]  The ALJ pointed to evidence that Plaintiff experienced noted improvement with Botox treatment relating to the frequency and severity of her migraine headaches.  [Filing No. 11-2, at ECF p. 21.]  The ALJ stated, "Notably, her most recent treatment noted that her migraine headaches were readily manageable."  [Filing No. 11-2, at ECF p. 21.]

In further summarizing the medical evidence, the ALJ described Plaintiff's treatment history from December 2015 through July 2020, noting in July 2020 at a visit with her neurologist, Plaintiff reported 1-2 headaches per month in comparison to 30 headaches per

month prior to Botox injections, with a current severity of 2 out of 10.  [Filing No. 11-2, at ECF p. 22.]  The ALJ reiterated that Plaintiff continued to have Botox injections and reported having four to six headaches per month that were readily manageable.  [Filing No. 11-2, at ECF p. 23.]

Plaintiff argues that the ALJ then assessed an RFC and presented hypothetical questions to the vocational expert that reflected the occurrence of no migraines, because they contained no corresponding time off task to deal with debilitating pain.  In response, the Commissioner argues that Plaintiff improperly attempts to shift the burden of proving her work limits to the ALJ.  *See, e.g., Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017) ("It was Summers's burden, not the ALJ's, to prove that she was disabled.").  As described above, the ALJ also considered the efficacy of treatment for Plaintiff's headaches.  *See* 20 C.F.R. § 404.1529(c)(3)(iv) (consideration of effectiveness of medication in relieving symptoms).  The ALJ noted that treatment improved the frequency and severity of Plaintiff's headaches, but also considered that Plaintiff told her doctor in April 2016 that loud music or television triggered her headaches and that she testified that loud noise and certain smells could also bring on migraine headaches.  Thus, the ALJ included environmental limits against exposure to odors and working around more than moderate noise in Plaintiff's RFC.

While Plaintiff argues that the ALJ should have credited her headaches with limits for being off task or absent from work, the record did not support such limits.  *See, e.g., Nicole M. v. Saul*, No. 1:20-cv-012620-TAB-TWP, 2021 WL 2882501, at *5 (S.D. Ind. July 9, 2021) ("While Plaintiff claims the ALJ failed to fully accommodate all limitations due to migraine headaches by accounting for time off task and absenteeism, Plaintiff cites no evidence that would support such a limitation within the RFC analysis.").  Despite assertions about headache-related work limits in her brief on appeal, Plaintiff has not identified any treating medical sources who assessed any

limits on work functioning, nor does she point to specific limits on time off task or absence from work.  Moreover, the state agency physicians considered evidence of Plaintiff's headaches—including treatment, severity, and frequency, and a headache questionnaire Plaintiff completed—and did not limit Plaintiff to the degree she alleged.  [Filing No. 11-2, at ECF p. 2-21, 24-43.]  The ALJ's analysis of Plaintiff's work capacity was thorough and reasonably "reflects an adequate logical bridge from the evidence to the conclusions."  *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Although Plaintiff disagrees with the ALJ's evaluation of the evidence, this does not mean that the ALJ erred.  The ALJ provided multiple valid reasons for concluding that Plaintiff was not as limited as she alleged.  Thus, remand is not appropriate.

### IV.    Conclusion

For these reasons, Plaintiff's request for remand is denied.  [Filing No. 13.]

Date: 1/23/2024

_____

Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

10